UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE CARPENTER,

        Plaintiff,                             Case No. 1:12-cv-844

v.                                               HON. JANET T. NEFF

BRANDON GILLISPIE and
JACOB BIELSKI,

        Defendants.
_____/

## OPINION

Plaintiff Lawrence Carpenter filed this excessive force case pursuant to 42 U.S.C. § 1983 against Manistee County and sheriff deputies Brandon Gillispie and Jacob Bielski, stemming from the use of a taser in effecting Plaintiff's arrest during a traffic stop.  The claim against Manistee County was dismissed.  Pending before the Court is Defendants' Motion for Summary Judgment (Dkt 26) of the remaining count, Count I, against the deputies.  Plaintiff has filed a Response (Dkt 28), and Defendants have filed a Reply (Dkt 29).  Having fully considered the parties' submissions, the Court concludes that oral argument would not assist in the disposition of the issues presented. *See* W.D. Mich. LCivR 7.2(d) (the Court has discretion to schedule oral argument or dispose of a dispositive motion without argument at the end of briefing).  Because there are disputed issues of material fact, Defendants' motion for summary judgment is denied.

I. Factual Background[1]

On February 8, 2010, Plaintiff was traveling on M-55 in Manistee County when Defendant Gillispie effected a traffic stop of his vehicle for investigation of driving with a suspended license (Def. Br., Dkt 27 at p. ID# 82; Pl. Br., Dkt 28 at p. ID# 110). Defendant Gillispie had had prior encounters with Plaintiff, stopping him twice previously for driving-while-license-was-suspended, and Gillispie was previously involved in an attempted stop of a vehicle in which the driver, who may have been Plaintiff, left the car and fled into the woods (Def. Br. at p. ID# 86-87). Gillispie was also aware that Plaintiff had been involved in an altercation with a state trooper in the past (Def. Br. at p. ID# 87).

Upon stopping Plaintiff's vehicle on this occasion, Gillispie walked up to the driver's side of Plaintiff's vehicle and opened the driver's door. Plaintiff exited the vehicle and placed his hands up and against the side of his truck as commanded by Gillispie. Immediately thereafter, Gillispie attempted to get Plaintiff's hands behind his back to handcuff him and a struggle ensued. Gillispie twice ordered Plaintiff to give Gillispie his hand, using a knee strike in an attempt to gain Plaintiff's compliance. Defendant Bielski arrived as back-up during the struggle, approached, and discharged an electronic stun device ("taser"), striking Plaintiff (Pl. Br. at p. ID# 111). Plaintiff fell to the ground after he was tased by Defendant Bielski. Plaintiff was taken into custody and transported to the hospital for treatment.

II. Summary Judgment Standard

A moving party is entitled to a grant of its motion for summary judgment "if the movant

---

[1] The factual recitation is provided for background. As noted *infra*, a number of factual assertions are in dispute.

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer,* 735 F.3d 462, 471 (6th Cir. 2013); *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.,* 712 F.3d 321, 327 (6th Cir. 2013) (citation omitted).

The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.,* 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson,* 477 U.S. at 248). "There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess,* 735 F.3d at 471 (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.,* 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson,* 477 U.S. at 251-52).

III. Analysis

Defendants move for summary judgment on the basis that no clearly established case law supports that Defendants acted unreasonably in effecting Plaintiff's arrest, and therefore, Defendants are entitled to qualified immunity.

The affirmative defense of qualified immunity applies to excessive force claims under 42 U.S.C. § 1983. "Police enjoy qualified immunity unless (1) the facts alleged show that the police violated a constitutional right; and (2) the right was clearly established." *Jones v. City of Cincinnati,*

3

521 F.3d 555, 559 (6th Cir. 2008) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Under this test, "qualified immunity is proper unless 'it would be clear to a reasonable officer' that his use of excessive force 'was unlawful in the situation he confronted.'" *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 902 (6th Cir. 2004) (quoting *Saucier,* 533 U.S. at 202).

Claims that law enforcement officers have used excessive force in the course of an investigatory stop or arrest are analyzed under the Fourth Amendment's reasonableness standard. *Jones,* 521 F.3d at 559 (citing *Graham v. Connor,* 490 U.S. 386, 395 (1989)). "'[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Griffith v. Coburn,* 473 F.3d 650, 656 (6th Cir. 2007) (quoting *Graham,* 490 U.S. at 397 (citation omitted)). "The test is 'reasonableness at the moment' of the use of force, as 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* (quoting *Graham,* 490 U.S. at 396 (citations omitted)). "[W]hen determining the reasonableness of the force used, courts should pay particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight'" ("*Graham* factors"). *Darrah v. City of Oak Park,* 255 F.3d 301, 307 (6th Cir. 2001) (quoting *Graham,* 490 U.S. at 396).

Defendants argue that Plaintiff was actively resisting Defendant Gillispie's attempt to handcuff Plaintiff and take him into custody. Further, Plaintiff's lack of immediate cooperation and the passing highway traffic posed a severe safety hazard; Plaintiff was "previously known to be resistant and a danger to flee"; and the officers used no force on Plaintiff after he stopped resisting (Def. Br. at p. ID# 88-89). Therefore, judging the circumstances from the perspective of a

reasonable officer on the scene, as required, Defendant Gillispie's single knee strike and Defendant Bielski's single one-second taser deployment were not clearly established constitutional violations.

Plaintiff counters that looking at the totality of the circumstance, Defendants' actions were "objectively unreasonable" and a knowing violation of Plaintiff's rights because Plaintiff was attempting to comply with Defendants' commands but they did not allow him enough time to comply before using excessive force, and ultimately, any resistance by Plaintiff was *de minimus*, which does not justify the use of force such as the taser.

With regard to the *Graham* factors, there appears to be no dispute that the severity of the crime, driving with a suspended license, does not weigh heavily in the use-of-force analysis here. And while Defendants point out the highway safety hazard and make a reference to previous flight by Plaintiff, and the Court gives some consideration to these circumstances, particularly the safety hazard, neither is critical to the Court's analysis.[2] The parties instead focus their arguments on whether Plaintiff was actively resisting arrest, which appears to be the key, if not dispositive, factor in this case.

The parties dispute both the law and the facts with regard to the "resistance" factor. The parties each appropriately cite to case law with analogous factual circumstances in support of their positions. As the Sixth Circuit has observed:

> "In inquiring whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002). "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or

---

[2]For example, the safety hazard could weigh either way in the Court's view, since the details of the initial confrontation between Defendant Gillispie and Plaintiff are unclear, and avoiding the use of force may have arguably de-escalated the situation.

5

from the general reasoning that a court employs." *Feathers* [*v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)].

*Champion,* 380 F.3d at 902. While the case holdings cited by the parties are helpful, the Court does not find them conclusive.

The Sixth Circuit has delineated certain baselines with regard to whether the use of a taser constitutes excessive force. "If a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him." *Hagans v. Franklin Cnty. Sheriff's Office,* 695 F.3d 505, 509 (6th Cir. 2012). By contrast, excessive force has been found in cases in which tasers are used on "suspects [who] were compliant or had stopped resisting." *Id.* And "[a] single tasing violates a plaintiff's clearly established rights if he is neutralized and is not resisting an officer's efforts to restrain him." *McAdam v. Warmuskerken*, 517 F. App' x 437, 438 (6th Cir. 2013).

More recently, in *Brown v. Weber,* ___ F. App'x ___, No. 13–5708, 2014 WL 552998, at *4 (6th Cir. 2014). the Sixth Circuit reiterated these parameters:

> In *Griffith v. Coburn*, this court held that a vascular neck restraint, which is equivalent to a taser in severity of force, was excessive when the suspect was unarmed and non-threatening, but passively resisted arrest by putting his arm behind his back and not cooperating with the officer's commands. 473 F.3d 650, 657, 658–60 (6th Cir. 2007); *see also Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006). However, "[i]f a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him." *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012) (holding there was no Fourth Amendment violation where an officer used a taser to subdue a suspect who had to be wrestled to the ground and continued to resist arrest by kicking, screaming, and refusing to be handcuffed). This court has also held that tasing a suspect is not excessive force when the suspect refuses to move his hands from under his body so that officers could handcuff him. *See Caie v. W. Bloomfield Twp.,* 485 F. App'x 92, 96 (6th Cir. 2012) (tasing a suicidal suspect once was not excessive force where the suspect spoke of provoking officers to use deadly force and ran away flailing his arms violently). In contrast, Brown was unarmed, made no verbal threats, and did not evade arrest.

*See also Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013):

> If there is a common thread to be found in our caselaw on this issue, it is that noncompliance alone does not indicate active resistance; there must be something more. It can be a verbal showing of hostility, as was the case in *Caie*. It can also be a deliberate act of defiance using one's own body, as in *Hagans*, or some other mechanism, such as the truck in *Foos* [*v. City of Delaware*, 492 F. App'x 582 (6th Cir. 2012). Taken in the light most favorable to Eldridge, his noncompliance was not paired with any signs of verbal hostility or physical resistance, and therefore cannot be deemed active resistance. *See also Coles v. Eagle*, 704 F.3d 624, 629-30 (9th Cir. 2012) ("We have drawn a distinction between passive and active resistance, and failing to exit a vehicle is not active resistance and does not justify the officers actions." (modifications and quotation marks omitted)).

However, the circumstances of this case do not fall neatly into these categories.[3] The excessive force claims here are not limited to Defendant Bielski's isolated use of the taser, but are also based on the use of force by Defendant Gillispie prior to the deployment of the taser. The Court must consider the reasonableness of each officer's conduct at each point in the encounter. *Sheffey v. City of Covington*, ___ F. App'x ___, No. 12–5109, 2014 WL 1663063, at *5 (6th Cir. 2014) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1161-62 (6th Cir. 1996)). Thus, the entire context of Defendants' encounter with Plaintiff must be considered. When viewing the context presented, it is clear that genuine issues of material fact preclude the resolution of the qualified immunity issues on summary judgment because the parties and the record present legitimate disagreements concerning the material facts.

---

[3]The Court also acknowledges that in determining reasonableness, the law must be considered as it existed at the time of the incident in question, i.e., in February 2010. *See Eldridge*, 533 F. App'x at 535.

The parties have provided the Court with (1) separate videos of the traffic stop from Defendant Gillispie's car and from Defendant Bielski's car after his arrival as back-up;[4] and (2) respective sets of "Stipulated Facts," and respective sets of "Additional Material Facts" in support of their arguments. The parties dispute Plaintiff's level of resistance and the import of that resistance under the law, i.e., whether it was merely *de minimus* such that Defendants' use of force was unwarranted. However, there is no discernable audio in the video from Defendant Gillispie's car, which is the only video of the first few crucial moments of the encounter, on which both parties in part rely and characterize differently. The parties provide the Court with separate written accounts of the events recorded on video and the audio in their briefs, but their accounts materially differ. The parties also rely on the deposition testimony, but the testimony does not conclusively resolve disputed facts.

For example, Defendants state as stipulated fact that Plaintiff admits that "the Deputy" was trying to put Plaintiff's arm behind his back, and they cite Plaintiff's deposition testimony that "I kind of turned toward the truck and hung on. And he said, well, put your arm behind your back and I told him I wasn't going to" (Dkt 27 at p. ID# 82). Plaintiff does not cite such "stipulated facts."

Plaintiff states that "he got out of the vehicle on Defendant's command," "placed [his] hand on the side of the vehicle and the officer was trying to put the other hand behind Plaintiff's back," and that Defendant Gillispie admits that Plaintiff "put both hands on the back of the truck as I asked him to do" (Dkt 28 at p. ID# 110-111). Plaintiff asserts that he had his hands against the truck and as Gillispie was trying to pull Plaintiff's arms to handcuff him, Plaintiff stated: "Just let me go and

---

[4]As well as a third audio recording of Plaintiff's medical treatment and his dialogue with Defendant Gillispie during the course of his treatment.

I will take my time and I will do it [put hands behind back], but he wouldn't do it, and that's when he started kneeing me or hitting me in the side of the leg" (*id.* at p. ID# 111). Plaintiff asserts that this can be seen on the video (*id.*). However, absent any audio on the video, and given the inconclusive deposition testimony, the nature and level of Plaintiff's resistance cannot be determined.

Likewise, Defendants assert that the "video" shows: "Deputy Gillispie attempts to turn Plaintiff, who is facing the Deputy, toward Plaintiff's vehicle. Plaintiff swings his arm back toward the Deputy. Plaintiff refuses to bring his left arm down. Audio is heard to say 'give me your hands, give me your hands.' Bielski orders "relax or you're going to get tasered" (separately citing both the Gillispie video and the Bielski video) (Dkt 27 at p. ID# 82-83). Defendants assert that the audio reveals that Deputy Gillispie stated "Give me your hands" at least two times before he attempted a knee strike to gain compliance, and that although Bielski warned Plaintiff that he would be tasered, Plaintiff admits "I don't pay no attention to that stuff" (*id.* at p. ID# 83).

Plaintiff disputes the timing and respective actions of the parties concerning his confrontation with Gillispie and Bielski's intervention. Plaintiff also cites evidence that Bielski gave no warning before deploying the taser.

These factual disputes preclude summary judgment. This entire incident transpired rapidly,[5] from the moment Defendant Gillispie walked up to Plaintiff's vehicle and opened the door to Defendant Bielski's arrival on the scene and deployment of the taser. The accounts of the events and actions by the deputies and Plaintiff differ, including as to what was said and done, when, and

---

[5] It appears that the incident was over in a matter of a few minutes, although the timing on the separate car videos does not coincide, which further complicates video-to-video references.

by whom. The record contains apparent inconsistencies that require clarification, likely through additional testimony, and perhaps only with credibility determinations where the testimony is at odds. To the extent that a resolution of the disputed facts hinges on credibility determinations of the three parties involved, such determinations are inappropriate on summary judgment. The court must not weigh the evidence or make credibility determinations in deciding a summary judgment motion. *Shreve v. Franklin Cnty., Ohio,* 743 F.3d 126, 142 (6th Cir. 2014). Accordingly, Defendants are not entitled to judgment as a matter of law. *See Back,* 694 F.3d at 575.

## IV. Conclusion

Defendants' Motion for Summary Judgment is denied. An Order will be entered consistent with this Opinion.


Dated: May 23, 2014                 /s/ Janet T. Neff
                                                        JANET T. NEFF
                                                        United States District Judge